[Cite as *State v. Stevens*, 2023-Ohio-3368.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220494 |
| Plaintiff-Appellee, | : | TRIAL NO. 20CRB-526 |
| vs. | : | *O P I N I O N.* |
| OTIS STEVENS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:   Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: September 22, 2023

*Emily Smart Woerner*, City Solicitor, and *Jon Vogt*, Assistant City Solicitor, for Plaintiff-Appellee,

*Bradley R. Hoyt*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1}   Defendant-appellant Otis Stevens appeals his conviction for violating a provision of the Cincinnati Municipal Code regarding the operation of nonconforming uses, specifically a contractor's storage lot.  He argues that the trial court erred in failing to find that operation of the contractor's storage lot was a lawful nonconforming use, that there was insufficient evidence to demonstrate that he had control over the property, and that both the complaint and the ordinance under which he was charged were unconstitutional.  Finding no merit to these arguments, we affirm Stevens's conviction.

*Factual and Procedural Background*

{¶2}   The charges against Stevens relate to the condition of a property located at 1707 Vine Street (the "Property").  Stevens was charged with violating Cincinnati Municipal Code 1451-09, which criminalizes the failure to comply with lawful orders from the city's Director of Buildings and Inspections.  The complaint alleged Stevens, in violation of Cincinnati Municipal Code 1400-05 and 1401-01-C19, failed to discontinue using his property as a contractor's storage lot, a prohibited use, after being ordered to do so.

{¶3}   Part of the complaint appeared to contain a typographical error.  Cincinnati Municipal Code 1401-01-C19 contains the definition for congregate housing, not the definition for contractor's storage.  That definition is contained in Cincinnati Municipal Code 1401-01-C20.

{¶4}   The case proceeded to a bench trial.  At trial, the city called three witnesses from the Department of Buildings and Inspections.  Greg Wiles, Assistant Supervisor for Inspections, testified that he inspected the Property in February 2020

and found it was in extreme disrepair.  Wiles testified that Stevens was present at the Property for the inspection and did not give any indication that he could not make the necessary repairs that were ordered.

{¶5}   James Brunner, Assistant Supervisor of Inspections, testified that after an amendment to the zoning code in 2004, the Property was zoned as "commercial community pedestrian," making use of the lot for contractor's storage unlawful. Brunner further testified that if use of the Property for contractor storage had been established prior to the adoption of the 2004 amendment, this would have been a lawful nonconforming use of the Property.  Brunner testified there were no records showing that Owens had lawfully established a contractor storage use prior to the 2004 amendment.

{¶6}   Walt Moeller, a Cincinnati Zoning Plans Examiner, testified that even if the Property did have a permit for contractor storage, the disorderly state of the Property would have still violated the city's rules for contractor storage.  Moeller further testified there was nothing in the city's records indicating that the Property had been used as a contractor storage yard prior to 2004.  But Moller testified that he did not review any records prior to the year 2000.

{¶7}   Stevens testified on his own behalf.  He testified that he was not a member of the Property Acquisition Group, LLC, which was listed as the owner of the Property.  But Stevens also testified that the Stevens Family Trust owned the Property Acquisition Group, LLC, and that he was a beneficiary of that trust.  Stevens testified that he was the managing member of Speedy Maintenance Service, a repair service, and this office was located on the Property.

{¶8} Stevens also testified that the Property had been used to house storage materials for many years dating back to the 1970s. He presented grainy aerial photographs from 1996 that purported to show the Property with storage contents in the yard.

{¶9} At the conclusion of the trial, the trial court found Stevens guilty. The trial court continued Stevens's sentencing hearing for 90 days to give him time to clean up the Property. Because Stevens repeatedly failed to appear in court and clean up the Property, multiple capiases for Stevens were issued and recalled. Eventually, the trial court sentenced Stevens to 20 days' incarceration and remitted any fines.

{¶10} Stevens filed a motion to mitigate the remainder of his sentence. The trial court granted this motion in part and stayed the balance of days in Stevens's sentence.

{¶11} Stevens now appeals.

### *Nonconforming Use*

{¶12} In his first assignment of error, Stevens argues that the trial court erred in failing to find that use of the Property as a contractor's storage lot was a lawful nonconforming use.

{¶13} "In a prosecution for a zoning violation, a defendant may assert the existence of a prior nonconforming use as an affirmative defense." *City of Hudson v. Patel*, 9th Dist. Summit No. 18434, 1997 Ohio App. LEXIS 5758, 4 (Dec. 24, 1997). The defendant bears the burden of proving the existence of the nonconforming use. *Rice v. Slyder*, 9th Dist. Summit No. 13324, 1988 Ohio App. LEXIS 1295, 3 (Apr. 6, 1988). A prior nonconforming use must meet two requirements: (1) the use must have been in existence prior to the enactment of the prohibitory land use regulation;

and (2) the land use in question must have been lawful when it commenced. *Verbillion v. Enon Sand & Gravel, LLC*, 2021-Ohio-3850, 180 N.E.3d 638, ¶ 120 (2d Dist.).

**{¶14}** Here, Stevens did not meet his burden in showing that a lawful nonconforming use existed on the Property. With regard to whether the Property was used as a contractor's storage lot prior to 2004, Stevens presented very little proof that it was. The 1996 aerial photographs are not of sufficient quality to conclusively demonstrate what the Property was being used for at that time, and the city's witnesses found no records indicating the Property had ever been used for contractor's storage.

**{¶15}** Moreover, even if Stevens had somehow demonstrated that the Property had contained a contractor's storage lot before 2004, he failed to meet the second part of the nonconforming use test: that the use was lawful. As Brunner and Moeller testified, contractor's storage lots require a permit, and Stevens presented none.

**{¶16}** Stevens therefore failed to meet his burden of proof in demonstrating that a contractor's storage lot was a nonconforming use of the Property. His first assignment of error is accordingly overruled.

### *Person in Control*

**{¶17}** Stevens next argues, in essence, that the trial court lacked sufficient evidence to find that he was a person in control of the Property. We find this assignment of error not well-taken.

**{¶18}** Cincinnati Municipal Code 1123-3-9 broadly defines the term "person in control" with regard to zoning offenses:

5

'Person in control' shall mean the person, persons, or entity holding title to the freehold estate of the premises; a mortgagee or vendee in possession; a receiver; an executor; a trustee; and any person, public or private entity, lessee or holder of a lesser estate in the premises, and/or its duly authorized agent(s), with the authority to bring a building or premises into compliance with the provisions of this code, including, but not limited to any mortgagee that has filed an action in foreclosure on the particular premises at issue, until title to the premises is transferred to a third party.

{¶19} The evidence at trial demonstrated that Stevens held himself out as a person responsible for upkeep of the Property. He was present during Wiles's inspection and did not give any indication that he lacked authority to make repairs. Moreover, Stevens is a beneficiary of the trust that currently owns the Property. He further owns a repair service which has contracts with the Property, and his office for this repair service is located at the Property. Thus, there was sufficient evidence to find Stevens was a person in control of the property, particularly given the broad scope of the zoning code.

{¶20} Stevens's second assignment of error is accordingly overruled.

### *Unconstitutionality*

{¶21} Lastly, Stevens contends that both the complaint and Cincinnati Municipal Code 1401-01-C19, which defines congregate housing, are unconstitutional. He contends that both are vague in the context of this case, given that Stevens was alleged to have operated an unlawful contractor's storage lot, not unlawful congregate housing.

{¶22} With regard to Stevens's constitutional challenge to the zoning code, we find no basis upon which to invalidate the definition of congregate housing. The mere reference to an irrelevant section of code in Stevens's complaint does not serve to make the code itself unconstitutional.

{¶23} With regard to Stevens's concerns about the complaint, we find this point potentially more troubling.[1] It appears that the city intended to cite subsection C20, which contains the definition of contractor's storage, rather than subsection C19, in charging Stevens. It certainly would have been preferable for the city to amend its complaint to correct this obvious typographical error.

{¶24} However, Stevens was charged with violating Cincinnati Municipal Code 1451-09, which prohibits the failure to comply with directives of the building and inspections director. The terms of this ordinance are readily understandable, and indeed Stevens does not challenge them on appeal. At the time he was charged, Stevens was aware that he had been ordered to discontinue use of the Property as a contractor's storage lot. He prepared to defend himself from that allegation at trial by collecting aerial photographs from 1996 and addressing how the Property had been used in the past to store contractor's materials.

{¶25} We therefore find no unconstitutionality in either Cincinnati Municipal Code 1401-01-C19 or Stevens's complaint and overrule his third assignment of error.

### *Conclusion*

{¶26} For the reasons set forth in this opinion, the judgment of the trial court convicting Stevens of violating Cincinnati Municipal Code 1451-09 is affirmed.

---

[1] We note that Stevens couches his arguments only in terms of unconstitutionality and does not challenge the sufficiency of the complaint under the Criminal Rules. Our holding is thus confined to resolving the alleged constitutional issue Stevens asks us to consider.

Judgment affirmed.

**CROUSE, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.